# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MOCIVEA, Inc.**<br><br>Plaintiff<br><br>Vs.<br><br>**MUNICIPALITY OF ARECIBO, MUNICIPALITY OF HATILLO, MUNICIPALITY OF QUEBRADILLAS**<br><br>Defendants | CIVIL No.: 25-1294<br><br><br><br>RE: Resource Conservation and Recovery Act |

# COMPLAINT

TO THE HONORABLE COURT:

NOW COMES plaintiff, MOCIVEA, Inc., duly represented by the undersigned attorney, and respectfully states, alleges, and prays as follows:

## JURISDICTION AND VENUE

1. This is a citizens' suit brought under the Resource Conservation and Recovery Act. (42 U.S.C. sec. 6901 *et seq.*, hereinafter RCRA or the Act)

2. This Court has subject matter jurisdiction over the claims outlined in this Complaint under section 6972(a) of the Act.

3. According to section 6972 (a) of the Act, venue is appropriate in the United States District Court of Puerto Rico because the violations complained of occurred and continue to occur within this District.

4. On February 11, 2025, the plaintiff gave notice under section 6972(b)(1) of the Act and 40 C.F.R. 254 of its intent to commence a civil action under section 6972(a)(1)(A). Notice was given to the Administrator of the Environmental Protection Agency, the Administrator of the Environmental Protection Agency - Region II, the Secretary of Puerto Rico's Department of Natural and Environmental Resources, and the defendants.

5. More than sixty (60) days have passed since notice was served. As of this date, neither the Administrator nor the Commonwealth of Puerto Rico has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or the Commonwealth of Puerto Rico to redress the violation stated in the notice.

## THE PARTIES

6. Plaintiff MOCIVEA, Inc. (MOCIVEA) is a non-profit corporation organized under the laws of the Commonwealth of Puerto Rico whose purpose, among others, is to protect human health and the environment.

7. Defendant Municipality of Arecibo is a non-profit, tax-exempt government entity organized under the laws of the Commonwealth of Puerto

Rico.

8. Defendant Municipality of Hatillo is a non-profit, tax-exempt government entity organized under the laws of the Commonwealth of Puerto Rico.

9. Defendant Municipality of Quebradillas is a non-profit, tax-exempt government entity organized under the laws of the Commonwealth of Puerto Rico.

**ALLEGATIONS**

10. During the last five (5) years and to date, the municipalities of Arecibo, Hatillo, and Quebradillas (Municipalities) have provided municipal solid waste collection services for residents and businesses within their jurisdictions. Once collected, the Municipalities transport and dispose of the waste in a municipal landfill owned by the Municipality of Arecibo. The facility is Arecibo Municipal Landfill, located in the Factor II ward in Arecibo (EPA ID Number PRS009000290, hereinafter AML).

11. AML receives solid waste from multiple sources. However, the Municipalities are among the largest individual waste contributors in the AML.

12. MOCIVEA members live close to the AML and are affected by the discharge of solid wastes in this facility.

13. MOCIVEA's members' quality of life is severely impaired by the

continuous discharge of solid wastes at the AML. This discharge negatively impacts the use and enjoyment of their properties, drastically impacts their quality of life, and well-being. MOCIVEA's members have been, are being, and will be adversely affected by the disposal of solid wastes in the AML.

14. The discharge of solid wastes causes foul odors that reach the homes of MOCIVEA's members. These odors cause discomfort, affect the use and enjoyment of their properties, and severely diminish their quality of life. In addition to dealing with foul odors in their daily lives, MOCIVEA's members often have no choice but to close their homes' windows to reduce the discomfort caused by these odors. These lead to uncomfortable heat levels in their homes, especially during the summer, or higher electrical bills due to the additional use of air conditioners.

15. Besides the odors, the discharge of solid wastes at the AML generates different gases. According to 85 FR 17246, landfill gas typically contains methane, carbon dioxide, and more than 100 non-methane organic compounds. The hazardous air pollutants emitted include, but are not limited to, vinyl chloride, ethylbenzene, toluene, and benzene. Mocivea's members' exposure to these gases causes them throat and sinus conditions and discomfort, in addition to the serious concern that inhaling these hazardous air pollutants daily can adversely affect their health.

16. The discharge of solid wastes in the AML also creates a breeding

ground for flies and mosquitoes. Flies transmit over 65 different infectious diseases to humans. These flies spread throughout the community, reaching the homes of MOCIVEA's members in great numbers. These insects interfere with their daily lives, annoy MOCIVEA's members, and, as disease vectors, cause them concerns because they expose them to health risks.

17. During the last 5 years, and up to this date, AML operations have failed to comply with the following regulatory requirements:

    a. Cover material requirements (40 CFR 258.21): AML must cover disposed solid waste with six inches of earthen material at the end of each operating day, or at more frequent intervals if necessary, to control disease vectors, fires, odors, blowing litter, and scavenging. Specifically, AML has not provided and is not providing coverage daily, and water erosion has exposed waste in many landfill areas previously covered.

    b. Access Requirements (40 CFR 258.25): AML must control public access and prevent unauthorized vehicular traffic and illegal dumping of wastes by using artificial barriers, natural barriers, or both, as appropriate to protect human health and the environment. Specifically, AML lacks adequate access control measures, leading to unauthorized access during the day and at night.

    c. Run-on/run-off control systems (40 CFR 258.26(a)): Owners or

operators of all MSWLF units must design, construct, and maintain: (1) A run-on control system to prevent flow onto the active portion of the landfill during the peak discharge from a 25-year storm; (2) A run-off control system from the active portion of the landfill to collect and control at least the water volume resulting from a 24-hour, 25-year storm. Specifically, AML doesn't have any of these run-on and run-off requirements.

     d. Surface water requirements (40 CFR 258.27): MSWLF units shall not cause a discharge of pollutants into waters of the United States, including wetlands, that violates any requirements of the Clean Water Act, including, but not limited to, the National Pollutant Discharge Elimination System (NPDES) requirements, under section 402. Specifically, leachate seepage from the closed cell face slope located at the east, west, and south sides of the landfill reaches the access road and drainage channels that eventually flow towards outfalls 002, 004, 005, 006, 008, and 009, which in turn discharge into Caño Tiburones. (See paragraph 55 of EPA's order in the case of Landfill Technologies of Arecibo, LLC; Docket Number CWA-02-2025-3100) AML has no NPDES permit authorizing any of these discharges.

     e. Closure Criteria (40 CFR 258.60(c)): The owner or operator of an MSWLF must prepare a written closure plan that describes the steps

necessary to close at any point during their active life in accordance with the cover design requirements in section 258.60(a) or (b), as applicable. The closure plan must include the information required under 40 CFR 258.60(c)(1)-(4). Specifically, AML's closure plan does not include an estimate of the largest area of the MSWLF unit ever requiring a final cover as required under § 258.60(a) at any time during the active life nor a schedule for completing all activities necessary to satisfy the closure criteria in § 258.60.

f. Financial Assurance for closure (40 CFR 258.71(b)): The owner or operator of each MSWLF unit must establish financial assurance for closure of the MSWLF unit in compliance with §258.74. Specifically, AML doesn't have any financial assurance for the closure.

g. Financial Assurance for post-closure care (40 CFR 258.72(a)): The owner or operator must have a detailed written estimate, in current dollars, of the cost of hiring a third party to conduct post-closure care for the MSWLF unit in compliance with the post-closure plan developed under § 258.61 of this part. Specifically, AML has no estimate or financial assurance for the post-closure plan.

### CLAIM FOR RELIEF

18. Plaintiff reallege, and set forth here in full, paragraphs one (1)

through seventeen (17) of the present Complaint.

19. RCRA includes a comprehensive federal program that provides for the regulation of solid waste disposal.

20. Open dumping represents a substantial danger to public health and the environment. (42 U.S.C. sec. 6901(b)) To avoid this, one of the objectives and national policies of RCRA is to prohibit future open dumping on the land and require the conversion of existing open dumps to facilities that do not pose a danger to the environment or health. (42 U.S.C. sec. 6902(a)(3)) To achieve that objective, RCRA provides that upon promulgation of criteria under RCRA, any solid waste management practice or disposal of solid waste that constitutes the open dump of solid waste is prohibited. RCRA prohibits open dumps and open dumping. (42 U.S.C. secs. 6945(a))

21. According to RCRA, on October 9, 1991, the Environmental Protection Agency enacted 40 CFR Part 258 entitled Criteria for Municipal Solid Waste Landfills. These regulations establish minimum national criteria under the RCRA for Municipal Solid Waste Landfill (MSWLF) units. These minimum national criteria ensure the protection of human health and the environment. (40 CFR 258.1(a))

22. The regulations under 40 CFR 258 apply to owners and operators of new MSWLF units, existing MSWLF units, and lateral expansions. (40 CFR 258.1(b))

23. An MSWLF unit means a discrete land area or an excavation that receives household waste. (40 CFR 258.2)

24. Disposal means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters. (RCRA 6903 (3))

25. Solid waste includes garbage, refuse, and other discarded material including solid, liquid, semisolid, or contained gaseous material resulting from, aside from certain exclusions, industrial, commercial, mining, and agricultural operations, and community activities. (42 U.S.C. sec. 6093(27))

26. Owner means the person(s) who owns a facility or part of a facility. (40 CFR 258.2)

27. The Municipality of Arecibo owns an MSWLF where all the defendants discharge solid wastes.

28. MSWLFs failing to satisfy the criteria required under 40 CFR 258 constitute open dumps, which are prohibited under section 6945(a) of the Act. (40 CFR 258.1(h))

29. As previously explained, AML is currently in violation of several requirements of 40 CFR 258, meaning that under 40 CFR 258.1(h), AML is an open dump where the disposal of solid wastes constitutes open dumping.

30. The municipalities have disposed of solid waste in AML during the last five (5) years, daily (except weekends) and up to the filing of this complaint. During that time, AML was an open dump, meaning that the municipalities' disposal at that facility was prohibited under section 6945(a) of the Act. The disposal practices of the abovementioned municipalities violated, violate, and will likely continue to violate the open dump prohibition under section 6945(a) of the Act.

31. RCRA explicitly allows the enforcement of the open dumping prohibitions under its citizen suit provision. (42 U.S.C. secs. 6945(a))

32. Section 6972(a) of the Act, provides in pertinent part: "The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A), …… and to apply any appropriate civil penalties under section 6928(a) and (g) of this title."

33. Section 6928(g) of the Act provides that "Any person who violates any requirement of this subchapter shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation. Each day of such violation shall, for purposes of this subsection, constitute a separate violation."

34. Section 6972(a) of the Act provides in pertinent part: "…The court,

in issuing any final order in any action brought pursuant to this section or section 6976 of this title, may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

**WHEREFORE**, the plaintiff hereby prays that judgment be entered against the defendants as follows:

A. Declare the defendants to have violated and continue to violate the open dumping prohibition of the Act;

B. Enjoin the defendants from disposing of any solid wastes into the Arecibo Municipal Landfill;

C. Order each defendant to pay appropriate civil penalties of up to $25,000.00 per day for unlawfully discharging solid wastes in an open dump;

D. Award plaintiff costs (including reasonable attorney, witness, and consultant fees); and

E. Award such other relief as the court deems appropriate.

**RESPECTFULLY SUBMITTED**.
In Quebradillas, Puerto Rico, this 2nd day of June 2025.

s/Miguel Sarriera-Román<br>
Miguel Sarriera-Román, Esq.<br>
USDC-PR 207714<br>
Attorney for Plaintiff<br>
Miguel Sarriera Román Law Office

1104 Calle San Miguel
Quebradillas, PR. 00678-2803
Phone: (787) 630-8319
email: miguelsarriera@yahoo.com