IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MOCIVEA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPALITY OF ARECIBO, et al.,<br><br>Defendants. | CIVIL NO. 25-1294 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

MOCIVEA, Inc. ("MOCIVEA" or "Plaintiff") filed the present suit against the Municipalities of Arecibo, Hatillo and Quebradillas ("the Municipalities") for their alleged breach of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq*. ("RCRA"). Specifically, MOCIVEA alleges the Municipalities have infringed various dispositions of 40 C.F.R. § 258 by depositing solid waste in the Arecibo Municipal Landfill ("the Landfill"), without complying with the RCRA regulations. It posits these violations have affected the quality of life of MOCIVEA's members drastically and that they have been, are and will be adversely affected by the disposal of such waste. (Docket No. 1).

Shortly thereafter, the Municipalities filed a "Motion to Dismiss for Lack of Article III Standing and for Failure to Join an Indispensable Party", arguing among other things, that Landfill Technologies of Arecibo, LLC ("LTA") (collectively with the Municipalities, "Defendants") was an indispensable party since it was the company in charge of the daily operations of the Landfill. (Docket No. 11).

MOCIVEA subsequently filed an Amended Complaint which was identical to the initial Complaint, except that it included LTA as a party. It explicitly stated, however, that

it "assert[ed] no claims against [LTA]." (Docket No. 14).

Before the Court are the Municipalities' "Second Motion to Dismiss" along with its corresponding Opposition, Reply and Sur Reply. (Docket Nos. 24, 25, 54 and 57). Before the Court are also LTA's "Motion to Dismiss" and MOCIVEA's "Notice of Non-Opposition to [LTA's] Motion to Dismiss." (Docket Nos. 43 and 44).

For the following reasons, the Motions to Dismiss filed by the Municipalities and the LTA are both GRANTED (Docket Nos. 24 and 43).

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 8(a).

Federal Rule of Civil Procedure 8(a) requires claims of relief to include, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "This short and plain statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (cleaned up). Detailed factual allegations are not necessary at this stage, rather "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Conclusory allegations or a formulaic recitation of the elements of a cause of action will not suffice. Twombly, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 559 U.S.at 570).

**B. Federal Rule of Civil Procedure 12.**

a. Federal Rule of Civil Procedure 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) allows defendants to request dismissal for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Thus, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (cleaned up).

When ruling on a 12(b)(1) motion, the Court "may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction." Baker v. Westin Río Mar Beach Resort, 194 F.R.D. 393, 395 (D.P.R. 2000). In doing so, the Court must "construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff[]." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).

When lack of standing is raised by a defendant, the Court should evaluate the motion under the Rule 12(b)(1) standard since "standing is a prerequisite to a federal court's subject matter jurisdiction." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). To prove standing, a plaintiff must prove (1) injury in fact, (2) a causal connection between the injury and the conduct complained of and (3) that the injury is redressable by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Id. at 561.

b. Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) allows defendants to request dismissal on the grounds that a plaintiff has failed to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). To rule on a 12(b)(6) motion, the Court must first "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz v. Republican Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Second, it should "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Id. at 55.

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff must provide the grounds of his/her cause of action with more than just a formulaic recitation of the elements of a cause of action. Twombly, 550 U.S. at 555-56. "[T]he combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

When addressing a motion to dismiss under Rule 12, the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff[]." Gargano, 572 F.3d at 48. Regardless of how skeptical the Court may be with regards to the allegations; it must accept them as true. Ashcroft, 556 U.S. at 678. If the allegations are "enough to raise a right to relief above the speculative level," a Rule 12(b)(6) motion must be denied. Twombly, 550 U.S. at 555.

## STATEMENT OF FACTS

The Court accepts Plaintiff's allegations as true for purposes of the Motions to Dismiss. Rae v. Woburn Pub. Schools, 113 F.4th 86, 98 (1st Cir. 2024); Rivera-Rosario v. LSREF2 Island Holdings, Ltd. Inc., 79 F.4th 1, 4 (1st Cir. 2023). All facts are derived from the Amended Complaint. (Docket No. 14).

During the last five (5) years and to the date of the Amended Complaint, the Municipalities have provided municipal solid waste collection services for residents and businesses within their jurisdictions. Once collected, the Municipalities transport and dispose of the waste in the Landfill. Plaintiff posits that, although the Landfill receives waste from multiple sources, the Municipalities are among its largest individual waste contributors. (Id.).

Plaintiff avers that during the last five (5) years and up to the date of the Amended Complaint, the Landfill has failed to comply with many of the regulatory requirements listed in 40 C.F.R. § 258 including that it has failed to comply with cover material requirements, access requirements, run-off/run-on control systems requirements, surface water requirements, closure criteria, financial assurance for closure and financial assurance for post-closure care. (Id.).

Allegedly, members of MOCIVEA who live close to the Landfill have had their quality of life severely impaired by the continuous discharge of solid waste at the Landfill. MOCIVEA avers this affects the use and enjoyment of their properties and drastically impacts their well-being. Specifically, that the solid waste creates: (a) foul odors, which affect the use and enjoyment of their properties and forces them to close the windows in their homes, causing uncomfortable heat levels and generating higher electrical bills, (b)

different gases which cause throat and sinus conditions and discomfort, and (c) a breeding ground for flies and mosquitoes that transmit over sixty-five (65) different infectious diseases to humans. (Id.).

## SUMMARY OF ARGUMENTS

### A. The Municipalities' Motion to Dismiss.

Before even discussing the reasons for dismissal, the Municipalities proffer that they are not the only ones in Puerto Rico to have contracts with LTA to dispose of their solid waste, meaning that they are only partially responsible for the solid waste that ends up in the Landfill. However, they highlight they are the only municipalities sued, even though there are multiple other entities in their same position. (Docket No. 24).

As for the arguments supporting their request for dismissal, the Municipalities claim lack of standing and failure to plead open dumping. Regarding standing, the Municipalities posit the Amended Complaint does not adequately plead a cognizable injury that is likely to be redressed by a remedy that the Court can fashion. First, they state MOCIVEA's members remain a mystery. As such, they argue the general remarks regarding broad injuries, that supposedly affected unspecified members of MOCIVEA, are not enough to establish an injury-in-fact sufficient to satisfy associational standing. Moreover, they explain MOCIVEA does not claim to have suffered an injury as a legal entity. Second, the Municipalities allege lack of redressability since the RCRA states that a citizen suit is barred "if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order" and a Consent Judgment governing the Landfill was entered into by this District

Court in Civil Case No. 14-1438 (JAG) (hereinafter, "Case No. 14-1438"). 42 U.S.C. § 6972(b)(1)(B); see also 42 U.S.C. § 6972(b)(2)(B)(iv).[1] (Docket No. 24).

Regarding open-dumping, the Municipalities aver that the section cited by Plaintiff, 40 C.F.R. § 258, regulates municipal solid waste landfills which effectively bars any claim about open dumping since municipal solid waste landfills are precisely the place where solid waste is to be disposed of, and because the Landfill is operating with all required permits, with a defined closure date and subject to a Consent Judgment, it cannot be deemed an "open dump." Thus, the appropriate section to allege open dumping would be 40 C.F.R. § 257, which is inapplicable in this case because the Landfill possesses the necessary permits for its operation. For these reasons, the Municipalities request the dismissal of all claims. (Id.).

In opposition, MOCIVEA contends it sufficiently argues injury in fact by alleging its members live close to the Landfill and that their quality of life is severely impaired due to the odors, gases, flies and mosquitoes. It asserts that, since this is merely a case requesting injunctive relief, the only pleading requirement regarding the identity of the members at this juncture is to mention them as such. Furthermore, it claims Case No. 14-1438 initiated as a Clean Air Act ("CAA") case, although it concedes the Consent Judgment includes multiple remedies under the RCRA, and that multiple paragraphs in the Consent Judgment outline a procedure for terminating the case once full compliance is achieved, but that the Municipalities fail to mention whether compliance has been achieved or not. It distinguishes Case No. 14-1438 from the present one by stating neither regulatory

[1] Docket No. 24, p. 15.

requirements nor the parties are the same, and that the government's case requires nothing from the people or entities that discharge waste into the landfill. Finally, it posits the open dumping allegation was brought under the correct regulation since landfills that fail to satisfy the criteria under 40 C.F.R. § 258 constitute open dumps. For these reasons, it moves the Court to deny the Municipalities' Motion to Dismiss. (Docket No. 25).

Shortly thereafter, the Court requested the Municipalities to file a Reply in which they addressed the applicability to this case, if any, of the landfill's defined closure date. (Docket No. 47).

In compliance therewith, the Municipalities filed a Reply in which they explained that the Landfill is scheduled to close during May 2027, which makes Plaintiff's plea moot. They listed, in detail, everything the Landfill would have to comply with before its closure is approved and that, after its closure, it would be under strict Environmental Protection Agency ("EPA") oversight for thirty (30) years. It further explained that this process is outlined in the Consent Judgment in Case No. 14-1438, precluding the present suit since the Government already sought to enforce the RCRA. Furthermore, it reiterates MOCIVEA still fails to identify at least one of its members with standing, which an organization is required to do under United Food & Commer. Workers Union Local 751 v. Brown Group, 517 U.S. 544, 555 (1996), that the injuries alleged are "suffered by **anyone** living near **any** landfill, regardless of whether the facility is compliant with the RCRA,"[2] that the Consent Judgment disposes of every single issue raised in the present case in addition to handling the closure, and that the statutory prohibition against open

[2] Docket No. 54, p. 5.

dumping is 40 C.F.R. § 257. However, it posits that, even if the applicable provision was 40 C.F.R. § 258 as Plaintiff contends, Plaintiff has failed to point to any precedent where this section has been applied to resolve an open dumping controversy in an authorized municipal solid waste landfill. Thus, it once again moves the Court to dismiss the instant case. (Docket No. 54).

MOCIVEA explains in its Sur Reply that the event that initiates the "closure phase" of a landfill is the final receipt of waste, which signals that the closure will begin immediately or within the year. 40 C.F.R. § 258.60(f). MOCIVEA contends the Municipality of Arecibo has not issued a final receipt of waste, which makes it skeptical about the prospect of the situation being solved without the present action. (Docket No. 57).

**B. LTA's Motion to Dismiss.**

Separately, LTA filed a Motion to Dismiss the Amended Complaint, or in the alternative, to dismiss all claims against it for lack of subject matter jurisdiction and for failure to state a claim against it. First, it argues the citizen suit is statutorily barred because the Consent Judgment in Case No. 14-1438 specifically includes agreements as to the alleged RCRA violations and as to the closure and post-closure of the Landfill. It further claims that in the Consent Judgment, the United States reserved the right to seek further relief for any criminal violations or imminent endangerment to public health, evincing that the EPA has not failed to prosecute its action. Moreover, it claims that, regardless of the Court's finding on the jurisdictional argument, the Amended Complaint contains no allegations against LTA and fails to meet the standard set in Federal Rules of Civil Procedure 8(a) and 12(b)(6) which is necessary for the claims to survive. Finally, it

contends its joinder as an indispensable party was improper since LTA does not have an interest that will be impaired. Thus, it moves the Court to dismiss the claims with prejudice and award it attorney's fees. (Docket No. 43).

In response, Plaintiff states that "it does [not] know exactly what LTA seeks to be dismissed, as there is no claim against [it]."[3] Thus, Plaintiff indicates that it has no objection to the dismissal or removal of LTA from the present suit. (Docket No. 44).

## LEGAL ANALYSIS

Defendants proffer three (3) reasons that warrant dismissal of the present claims, to wit, lack of injury in fact, lack of redressability and failure to plead open dumping. Since the lack of redressability argument justifies the dismissal of the Amended Complaint in its entirety, the Court does not reach the remaining arguments raised by Defendants.

### 1. Lack of redressability.

The RCRA is the United States' primary law governing the disposal of solid and hazardous waste, which intends to prohibit open dumping, to regulate the treatment of solid and hazardous waste and to promulgate the guidelines for their correct disposal, among other things. 42 U.S.C. §§ 6901 *et seq*. In fact, the First Circuit has previously described the RCRA as "a cradle-to-grave statute providing a full range of remedies designed to protect both health and the environment." Chico Service Station, Inc. v. Sol Puerto Rico, Ltd., 633 F.3d 20, 26-27 (1st Cir. 2011) (quoting U.S. v. Borowski, 977 F.2d 27, 31 (1st Cir. 1992)). To further its objectives, "Congress provided for broad enforcement of RCRA by federal and state regulators as well as through citizen suits." Chico Service

[3] Docket No. 44, p. 3.

Station, 633 F.3d at 27. For example, 42 U.S.C. § 6972(a)(1)(A) provides that citizens may commence a civil action on their own behalf "against any person … who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." These citizen suits typically "function as a form of statutory enforcement in addition to, or in conjunction with, enforcement by an administrative agency or other governmental entity." Esso Standard Oil Co. (P.R.) v. Rodríguez-Pérez, 455 F.3d 1, 5 n. 2 (1st Cir. 2006). As such, they "complement, rather than conflict with agency enforcement of the law." Chico Service Station, 633 F.3d at 27. Importantly, the only remedies allowed to be sought are injunctive relief and penalties. 42 U.S.C. § 6972(a)(2).

Before filing a citizen suit, any person interested in commencing a civil action must comply with two (2) requirements. First, it must give notice of the violation to the EPA, the state and any alleged violator of a permit, standard, regulation, condition, requirement, prohibition or order. Id., § 6972(b)(1)(A). The purpose of this notice "is to give the government the first chance to enforce, and allow citizens to enforce when the government fails to do so."[4] Once sixty (60) days have passed since the notice and the EPA's silence persists, citizens are allowed to file their RCRA violation claim. Second, it is barred from commencing its own action if "the [EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition or order." Id., § 6972(b)(1)(B). Allowing citizen suits where there are already

[4] Miller, Jeffrey G., *Theme and Variations in Statutory Preclusions Against Successive Environmental Enforcement Actions by EPA and Citizens, Part One: Statutory Bars in Citizen Suit Provisions*, 28 HARV. ENV. L. REV. 402, 427-428 (2004).

government actions seeking compliance with the same requirements would be duplicative.[5] Thus, citizen suits are meant to enforce regulations when the government fails to do so or to strengthen weak government enforcement.[6]

Once the EPA identifies a non-compliant party and decides to enforce federal regulations, one way the parties can resolve their controversy is through a consent decree. See Maine People's Alliance and Natural Resources Defense Council v. Mallinckrodt, Inc., 471 F.3d 277, 280 (1st Cir. 2006). A consent decree is entered as an order of the court but is essentially an agreement reached by the parties. Its particularity, however, involves the fact that "[a] court entering a consent decree must examine its terms to be sure they are fair and not unlawful." Aronov v. Napolitano, 562 F.3d 84, 91 (1st Cir. 2009). Thus, although a consent decree embodies an agreement of the parties, "it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 378 (1992). Thus, the existence of a consent decree between the EPA and an allegedly non-compliant party, if diligently prosecuted, is enough to bar citizens from filing suit.

Both the Municipalities and LTA argue that the Consent Judgment in Case No. 14-1438 bars the filing of the present suit since its existence impedes this Court from granting any redress. Defendants aver the Consent Judgment includes agreements as to alleged RCRA violations that are object of this case and significant financial and operational obligations, proving that the EPA has not failed to prosecute its civil action. In fact, both

[5] Id., p. 449.
[6] Id., p. 486.

Motions to Dismiss include tables with side-by-side comparisons of the allegations made in the Amended Complaint and the paragraphs included in the Consent Judgment addressing each issue. Conversely, Plaintiff argues the Consent Judgment is irrelevant to the present suit because Defendants have failed to mention if compliance has been achieved, that Case No. 14-1438 began as a case of CAA violations and for unknown reasons includes multiple remedies under the RCRA, and that the parties and regulatory requirements are different in both cases.

As to the first requirement of a citizen suit, Plaintiff avers it gave notice to the Administrator of the EPA of the intent to file a civil suit on February 11, 2025, and subsequently waited for over sixty (60) days of silence from the EPA, to file the present suit on June 2, 2025.[7] Thus, in taking the allegations in the Amended Complaint as true, the first requirement is met. The second requirement, however, is not met.

In May of 2014 the EPA filed Case No. 14-1438, which included a Complaint, along with a Notice of Settlement and a Proposed Consent Decree, against the Municipality of Arecibo, the Puerto Rico Land Authority and LTA for violating the CAA, 42 U.S.C. §§ 7401 *et seq*. It sought civil penalties for violations of the Commonwealth of Puerto Rico Air Regulations and the National Emission Standards for Hazardous Air Pollutants: Municipal Solid Waste Landfills. 40 C.F.R., Part 63, Subpart AAAA, §§ 63.1930-63.1990. The Proposed Consent Decree, however, encompassed more than just the CAA allegations since it included agreements between the parties that assured compliance with both the CAA and the RCRA, stipulated penalties for noncompliance of both regulations and

[7] Docket No. 14, p. 2.

reserved the United States' right to use all legal and equitable remedies available to enforce the provisions of the consent decree.[8] On March 31, 2015, the Court entered a Consent Judgment and terminated the civil case.

The Consent Judgment includes three (3) particularly relevant clauses to the case at hand. First, paragraph fifty-two (52) includes stipulated penalties for CAA and RCRA violations.[9] These penalties are on a per-violation, per-day basis and increase depending on how long the period of non-compliance lasts.[10]

Second, paragraph eighty-four (84) of the Consent Judgment states:

> This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, **except as otherwise provided by law**. The Consent Decree does not affect the Defendants' private rights, duties or obligations as to the other Defendants, including, but not limited to, any contract rights.[11] (Court's emphasis).

Additionally, paragraph ninety-one (91) states:

> The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XII (Dispute Resolution) and XX (Modification), or effectuating or enforcing compliance with the terms of this Decree.[12]

Finally, it should be noted that the most recent entry in Case No. 14-1438 is a "Notice of Appearance *and Substitution of Counsel*" filed on April 26, 2024, where a Senior Attorney of the U.S. Department of Justice notified a replacement of counsel for

[8] Civil No. 14-1438, Docket No. 9.
[9] Id., ¶ 52.
[10] Id.
[11] Id., ¶ 84.
[12] Id., ¶ 91.

the United States, since the previous Attorney for the U.S. Department of Justice had retired.[13]

MOCIVEA attempts to distinguish Case No. 14-1438 from the present case, however, both cases are intertwined. Plaintiff first argues that Case No. 14-1438 began due to violations of the CAA, therefore it is different to this case. However, the parties in Case No. 14-1438 voluntarily agreed to terms that would put an end to the case, and these terms undeniably include compliance with the RCRA. Regardless of how the case began, the parties had contractual liberty to include the terms they deemed appropriate to put an end to their controversy. See Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland, 478 U.S. 501, 519 (1986) ("[consent decrees'] terms are arrived at through mutual agreement of the parties."); see also U.S. v. ITT Continental Baking Co., 420 U.S. 223, 236 n. 10 (1975) (consent decrees "are arrived at by negotiation between the parties.").[14] As evinced in the Consent Judgment, the parties did just that in paragraph fifty-two (52).

Plaintiff additionally posits that the parties and the prohibitions differ in Case No. 14-1438 and the present suit. However, they are only different because MOCIVEA filed this case against different parties and alleged that these parties' behavior was infringing the RCRA.[15] From a reading of the Amended Complaint and the Consent Judgment, it is

---

[13] Id., Docket No. 10.

[14] Paragraph eighty (80) of the Consent Judgment states:

> This Consent Decree resolves the civil claims of the United States for the CAA violations alleged in the Complaint filed in this action through the date of lodging of this Consent Decree with the Court. The Consent Decree does not limit any rights or remedies available to the United States for any criminal violations. (Civil No. 14-1438, Docket No. 9, ¶ 80).

[15] Before going any further, the Court notes that, although MOCIVEA posits its claims are directed at the Municipalities for their discharge of waste into the Landfill, the Court finds their responsibility ends the moment the solid waste is deposited in the Landfill. Thus, LTA's presence in this suit, as day-to-day operator of the Landfill, is necessary, which adds to Defendants' proposition that Case No. 14-1438 has already addressed the violations raised in the Amended Complaint.

clear the allegations are virtually identical and fall under the agreements reached in the Consent Judgment.

First, MOCIVEA alleges that, over the last five (5) years and up to the date the Amended Complaint was filed, the Landfill has failed to "cover disposed solid waste with six inches of earthen material at the end of each operating day . . . to control disease vectors, fires, odors, blowing litter and scavenging."[16] The Consent Judgment, in its twenty-third (23) paragraph, orders Defendants to "[c]over disposed solid waste with six inches of earthen material, and/or an acceptable alternative daily cover, at the end of each operating day, or at more frequent intervals if necessary, to control disease vectors, fires, odors, blowing litter, and scavenging."[17]

Second, MOCIVEA claims that the Landfill has failed to "control public access and prevent unauthorized vehicular traffic and illegal dumping of wastes by using artificial barriers, natural barriers, or both, as appropriate to protect human health and the environment. Specifically, [the Landfill] lacks adequate access control measures, leading to unauthorized access during the day and at night."[18] The Consent Judgment, in its twenty-second (22) paragraph regulates the security in the Landfill and states that "[i]f EPA determines that the measures already implemented are insufficient, Defendants shall submit to EPA, for review and approval pursuant to Section IX [ ] a plan for substantial, additional steps to ensure that unauthorized access to the Landfill is restricted so that theft, scavenging, and trespass incidents are minimized."[19]

[16] Docket No. 14, p. 5-6 ¶ 17(a).
[17] Civil Case No. 14-1438, Docket No. 9, ¶ 23(a).
[18] Docket No. 14, p. 6 ¶ 17(b).
[19] Civil Case No. 14-1438, Docket No. 9, ¶ 22.

Third, MOCIVEA asserts the Landfill has failed to comply with "[a] run-on control system to prevent flow onto the active portion of the landfill during the peak discharge from a 25-year storm" and "[a] run-off control system from the active portion of the [L]andfill to collect and control at least the water volume resulting from a 24 hour, 25 year storm."[20] In its twenty-seventh (27) paragraph, the Consent Judgment regulates stormwater and leachate management. Specifically, it states LTA must "ensure[ ] that the Landfill is designed, constructed, and maintained to prevent stormwater run-on flow onto the active portion of the Landfill during the peak discharge from a 25-year storm and that the Landfill is designed, constructed, and maintained to collect and control at least the water volume resulting from a 24-hour, 25-year storm from the active [ ] portion of the Landfill."[21]

Fourth, MOCIVEA contends the Landfill has no National Pollutant Discharge Elimination System permit to authorize "discharge of pollutants into waters of the United States."[22] Specifically, it avers "leachate seepage from the closed cell face slope located at the east, west, and south sides of the [L]andfill reaches the access road and drainage channels that eventually flow [ ] into Caño Tiburones."[23] Nonetheless, Paragraph twenty-seven (27) specifically orders the "[p]revent[ion] of discharge of a point or nonpoint source of pollution into the adjacent wetlands, any waterways [ ] leading to wetlands, or any navigable waters of the United States."[24]

[20] Docket No. 14, p. 6 ¶ 17(c).
[21] Civil Case No. 14-1438, Docket No. 9, ¶ 27(b).
[22] Docket No. 14, p. 7 ¶ 17(d).
[23] Id.
[24] Civil Case No. 14-1438, Docket No. 9, ¶ 27(c).

Fifth, MOCIVEA claims that LTA's "closure plan does not include an estimate of the largest area of the [Landfill] unit ever requiring a final cover as required under § 258.60(a) at any time during the active life nor a schedule for completing all activities necessary to satisfy the closure criteria in § 258.60."[25] Paragraph thirty-three (33) of the Consent Judgment dictates "[w]ithin 270 days of EPA's approval of the ESCP,[26] Defendants shall submit a revised Closure Plan, incorporating the findings of the SWDPR [sic][27] and ESCP, for EPA review and approval pursuant to Section IX."[28]

Sixth, MOCIVEA posits that LTA "must establish financial assurance for closure of the [Landfill] unit in compliance with § 258.74," which LTA has failed to comply with.[29] Paragraph thirty-eight (38) of the Consent Judgment states "[w]ithin 120 days of the Effective Date, Arecibo shall submit to EPA, for review and approval pursuant to Section IX [ ], a Financial Assurance Plan [ ] describing how Arecibo will comply with the requirements of 40 C.F.R. Part 258[.70-.75] with respect to financial assurance for closure and post-closure care."[30]

Finally, MOCIVEA alleges LTA does not "have a detailed written estimate, in current dollars, of the cost of hiring a third party to conduct post-closure care for the [Landfill] unit in compliance with the post-closure plan developed under § 258.61."[31] Paragraph thirty-nine (39) of the Consent Judgment states that "[w]ithin 60 days of the EPA's approval of the revised Closure and Post-Closure Plans, Arecibo shall submit to

[25] Docket No. 14, p. 7 ¶ 17(e).
[26] ESCP stands for Erosion Sedimentation Control Plan. Civil Case No. 14-1438, Docket No. 9, ¶ 27.
[27] SDWRP stands for Solid Waste Delineation Report and Plan. Id., ¶ 25.
[28] Id., p. 13, ¶ 33.
[29] Docket No. 14, p. 8 ¶ 17(f).
[30] Civil Case No. 14-1438, Docket No. 9, ¶ 38.
[31] Docket No. 14, p. 8 ¶ 17(g).

EPA, for review and approval pursuant to Section IX [ ], a Revised Financial Assurance Plan [ ] describing how Arecibo will comply with the requirements of 40 C.F.R. Part 258[.70-.75] with respect to financial assurance for closure and post-closure care."[32]

By raising its allegations against the Municipalities, MOCIVEA seeks to avoid the truth of its Complaint, which is an attempt to enforce the Consent Judgment dictated in Case No. 14-1438.

In a last effort to make Case No. 14-1438 inapposite, MOCIVEA alleges that multiple paragraphs in the Consent Judgment outline a procedure for terminating the case once full compliance is achieved, but that the Municipalities fail to mention whether compliance has been achieved or not. This is precisely the type of claim that should be brought in Case No. 14-1438 and not separately, since it seeks compliance with its judgment which addresses the issues raised herein. Pursuant to Paragraph ninety-one (91), as mentioned previously, the Court in Case No. 14-1438 retained jurisdiction to enforce compliance with the terms of the Consent Judgment. Thus, the instant case is not the correct case to request Defendants to inform Plaintiff whether compliance with the Consent Judgment has been achieved or not. The correct case to raise this type of claim is Case No. 14-1438.

Notwithstanding the existence of a previous case, for a government case to bar the filing of a citizen suit, the RCRA requires the government to be "diligently prosecuting" a civil action in a court of the United States. 42 U.S.C. § 6972(b)(1)(B). "While the entry of the consent decree is certainly relevant, it is not conclusive evidence of diligent

[32] Civil Case No. 14-1438, Docket No. 9, ¶ 39.

prosecution that would categorically bar any citizen from proceeding on a claim relating to the same violations addressed by the consent decree." Cebollero-Bertan v. PRASA, 4 F.4th 63, 75 (1st Cir. 2021).[33] However, "[a]n ongoing violation cannot, by itself, prove a lack of diligent prosecution sufficient to overcome the [ ] bar on citizen suits." Id. It is also important to remember that "[i]n pursuing its 'plan of attack,' the agency is not required to take the precise action [Plaintiff] wants it to or to move with the alacrity [Plaintiff] desires." Id. (cleaned up). At the end of the day, the EPA chooses where and how to spend its resources.

In Francisco Sánchez v. Esso Standard Oil Co., 572 F.3d 1, 12-14 (1st Cir. 2009), the Court identified four (4) criteria to decide whether the diligent prosecution bar prohibited the plaintiff's suit, to wit: (1) if the complaints involved different contaminants, (2) if the complaints allege violations of different regulations, (3) the scope of the alleged contamination and (4) the degree to which the remedial remedies overlap.

First, unlike the Amended Complaint here, Case No. 14-1438 is not specific about the contaminants it intended to prohibit. However, while the Amended Complaint in this case mentioned specific gases and hazardous air pollutants, which it described as typical landfill gases, Case No. 14-1438 began as a CAA violations case and specifically sought redress for violations of Part VII of the Commonwealth of Puerto Rico Air Regulations and the National Emission Standards for Hazardous Air Pollutants: Municipal Solid Waste Landfills. Similarly, the instant Amended Complaint seeks to prevent the

[33] Many federal statutes designed to protect the environment, that is, the Clean Water Act, 33 U.S.C. § 1365; CAA, 42 U.S.C. § 7604; RCRA, 42 U.S.C. § 6972; Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9659; Safe Drinking Water Act, 42 U.S.C. § 300j-8; among others, contain a provision that allows citizens to present suits for violations of said statutes when the government fails to do so. Thus, by analogy, the Court will extend decisions regarding citizen suits under other federal environmental statutes.

Municipalities from depositing their solid waste into the Landfill and Case No. 14-1438, in the Consent Judgment, dealt with the construction of a gas collection and control system, as well as waste disposition and control. Thus, the Court finds the complaints involve similar contaminants.

Second, the present case and Case No. 14-1438 involve the same regulation violations. The Consent Judgment and the Amended Complaint both seek compliance with the RCRA regulations governing solid waste disposal and its alleged violation of cover material requirements, access requirements, run-on/run-off control systems, surface water requirements, closure criteria financial assurance for closure and financial assurance for post-closure care.

Third, the scope of the alleged contamination in both cases involve the Landfill, its surrounding areas and nearby waterways.

Finally, the corrective remedies requested are virtually identical, that is, compliance with section 258 of the RCRA. "If [ ] the remedy is identical, then whichever action is resolved first will obviate the need for the performance of that remedy in the other action." Id., at 13. As if more were necessary, the Court adds that the goal of both the present case and Case No. 14-1438 is the Landfill's compliance with federal regulations and its eventual closure.

Even if this Court were to understand that there were violations of the Consent Judgment that warranted its intervention, it would be barred from doing so. "This is so because, by its nature, a consent decree contemplates a court's continuing involvement in a matter." Aronov v. Napolitano, 562 F.3d 84, 91-92 (1st Cir. 2009). As previously mentioned, in paragraph ninety-one (91) of the Consent Judgment, the Court in Case No.

14-1438 retained jurisdiction of the case until the termination of the Consent Judgment.[34] Thus, jurisdiction remains in Case No. 14-1438 in which Judge Jay García-Gregory is the one who can intervene in the Landfill's compliance or non-compliance with the RCRA, and by consequence the Consent Judgment. For the sake of judicial economy, any RCRA violations that occur on the Landfill, regardless of where the solid waste comes from, should be redressed in Case No. 14-1438.

Plaintiff's attempt to bypass the applicability of the Consent Judgment issued in Case No. 14-1438, by arguing the parties and prohibitions are different, while simultaneously alleging violations to the dispositions included in the Consent Judgment, is futile. The allegations in the Amended Complaint are effectively word for word the agreements reached in the Consent Judgment, which makes the applicability of the Consent Judgment clear. Case No. 14-1438 has an entry as recent as April 26, 2024, thus demonstrating that, almost a decade later, the EPA is still actively monitoring the case, making it the correct vessel for the present suit.

Given that this Court cannot fashion any redress for the claims listed in the Amended Complaint, dismissal is warranted.

**CONCLUSION**

For the foregoing reasons, the Municipalities' Second Motion to Dismiss and LTA's Motion to Dismiss are both GRANTED. (Docket Nos. 24 and 43).

Accordingly, all claims raised by Plaintiff MOCIVEA in the Amended Complaint against the Municipalities of Arecibo, Hatillo and Quebradillas and Landfill Technologies

[34] Civil Case No. 14-1438, Docket No. 9, ¶ 91.

of Arecibo, LLC are DISMISSED WITH PREJUDICE.[35]

Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 8th day of May 2026.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES DISTRICT JUDGE

[35] This ruling does not prevent MOCIVEA from raising the issues in this case in Case No. 14-1438 to seek proper redress.